UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Mark N. Fellenz
PLAINTIFF

CIVAL ACTION

V.

NO. _____

Enkata Technologies
DEFENDANT

## COMPLAINT

### PARTIES

1. Plaintiff is a resident of the Commonwealth of Massachusetts and resides at 95 Langley Road #1, Newton Center, MA 02459.

2. Defendant is a business registered in the State of California and headquartered at 2121 South El Camino Real, Suite 1200, San Mateo, CA 94403.

### JURISDICTION

3. Enkata Technologies ("Defendant") has utterly failed in their fiduciary duties and responsibilities as Plan Administrator to honor coverage for health insurance Mark Fellenz ("CHEWIE") paid for 1) in good-faith and 2) with reasonable expectation that he would receive continued coverage for medial treatment of an ongoing illness. Defendant's behavior and actions are in defiance of both ERISA and COBRA guidelines as defined in Federal Statute over which United States District Court has complete jurisdiction.

4. Specifically (and with the very best of CHEWIE'S effort – if not skill – to properly identify the specific and applicable Federal Statute), Federal Statute involved are the following:

   - 29 U.S.C. § 1161 (or related statute) making clear that an employer must supply proper and timely notification to participants;

   - 29 U.S.C. § 1104(a)(1)(B) specifying an employer must administer their plan with the care, skill, prudence, and diligence required;

   - 29 U.S.C. (exact statute not specified) outlining an employer's clear fiduciary responsibility with respect to plan administration;

   - 29 U.S.C. § 1024(b)(4) (or related statute) pertaining to a plan administrator's obligation to provide copies of plan materials to a participant; and

   - Any other statue or applicable law implied by this case that are reasonably identifiable in the matter presented below and covered under the jurisdiction of the United States District Court. Given the Pro Se nature of this filing, CHEWIE asks for reasonable assistance in identifying additional statute as may be reasonably applicable and consistent with this Complaint.

5. Additionally cited, though no specific statute is provided, is any U.S.C. applicable to a breach in the contract as entered into by CHEWIE both in good-faith and with reasonable expectation of receiving continued benefits. Given the Pro Se nature of this filing, CHEWIE asks for leniency in not citing specific, applicable statute.

6. Furthermore, Federal Statute states a lawsuit pertaining to the above may be filed in any of the following locations: the District of Defendant, the District of Plaintiff, or the District of the related offense. CHEWIE chooses the United States District Court, District of Massachusetts, Boston Courthouse, the District of Plaintiff.

11. It is not until the matter of coverage for September 2002 is raised that serious questions begin to surface. As stated above, the premium for September 2002 was paid in a timely manner. In fact, the same *exact* Plan was *actually* in place during September 2002 as had been in place in months prior to September 2002. CHEWIE even went yet one step further to confirm that coverage was in effect for September 2002 as he was in the process of transitioning to another carrier effective October 2002 and wanted to make absolutely sure there was no unintended break in coverage. CHEWIE was assured everything was Ok and full coverage was in place.

12. Unfortunately, it was not until well *after* September 2002 that Defendant decided to *retroactively* change carriers. This was done without notification or consultation of any kind, and it has since been Defendant's demonstrated behavior to avoid their fiduciary responsibility every step of the way as presented below and substantiated with facts and documentation dating back to late 2002.

13. First (and as stated above), the carrier change was made both retroactively *and* without any sort of notification or consultation of any kind. In fact, no explanation (let alone any notification of any kind) regarding the carrier change has ever been provided, and it is now 18 months after the fact ! This is still the case despite a great number of attempts to both raise the issue and amicably resolve the matter with Defendant.

14. Second, Defendant has failed in its fiduciary responsibility to honor benefits that were actually in place at the time the retroactive carrier change was effected. The fact is it was Defendant's own decision to conduct a retroactive carrier change and thereby incumbent upon Defendant to honor past benefits that were actually in effect at the time. A total failure to honor benefits, however, is all that's been encountered despite such remarks by Defendant as the following:

*"If HealthNet* [original insurer] *would have covered the cost of those services even though Blue Shield* [retroactive insurer] *declined to cover them we would be responsible and would cover them."* – Enkata Technologies

15. Even if Defendant had not explicitly acknowledged their responsibility in making such remarks, it is simply not within the rights of an employer to *negatively* impact *past* benefits and jeopardize CHEWIE'S continued treatment, which is exactly what has and continues to occur.

16. Third, repeated attempts to obtain relevant documentation from Defendant related to the plan and the matter of the retroactive carrier change have been ignored and are hereby considered refused. This refusal is inexplicable as it clearly violates established guidelines regarding fair access to such documentation.

17. Fourth, Defendant simply failed to make *any* proactive effort to avoid the problem of unfulfilled benefits or to take *any* measure to resolve the matter, *even once the matter was brought directly to Defendant's attention* ! Aside from the clear and simple fact there was no notification, proper plan administration calls for proactive effort to avoid such problems and, at the very least, timely resolution once problems are raised. Neither has happened in this case over the past 18 months despite repeated efforts to amicably resolve the matter and more than ample time provided Defendant.

18. Fifth, CHEWIE has a legal right to the health insurance he purchased when he paid the requisite premium. This is a matter of an implicit contract entered into both on good-faith and a reasonable expectation that coverage would be available as it had been in prior months.

19. The following are the counts identified in association with this lawsuit. They are presented below to the degree an itemization of such is appropriate at this time and is not intended as infringement on the roles and responsibilities of others involved in this process.

    - No notification of communication of any kind was ever received regarding the retroactive carrier change, and no explanation has been provided to date. This is despite Defendant being in possession of CHEWIE'S contact information (both physical and e-mail address). This defies guidelines centering on the obligations of an employer to notify both past and current employees of Plan changes. This is entered as Count #1.

    - Defendant has failed to fulfill its plan administration fiduciary duties and responsibilities. This is demonstrated in numerous ways but is highlighted both in their failure to comply with their own remarks acknowledging their fiduciary responsibility as well as Defendant's lack of proactive effort to avoid creating such a problem (or to resolve the matter once it was brought to Defendant's attention). This pattern demonstrates a consistent behavior of Defendant ignoring Defendant's fiduciary duties and responsibilities in clear contrast to the administrative expectations placed upon an employer. These are entered as Counts #2 and #3, #2 being Defendant's failure to take measures to properly administer their plan and #3 being Defendant's failure to fulfill their fiduciary responsibility.

    - Defendant has refused to provide relevant documentation related to the matter in clear defiance of established guidelines ensuring employee access to such documentation. This is entered as Count #4

> ➤ A good-faith contract was entered into when CHEWIE paid his premium in both a timely manner and as he had in prior months. CHEWIE reasonably expected continued coverage for treatment that was *identical* to that received and covered in prior months. Defendant would have CHEWIE be clairvoyant of their carrier change in order to avoid a problem regarding an unforeseeable future event. This is entered as Count #5.

20. Any appropriate suggestion(s) on additional counts (or a reorganization of the itemized counts above) deemed appropriate by the United Stated District Court would be appreciated given the Pro Se nature of this lawsuit and may be appended as deemed appropriate to assist in clarity, accuracy, or completeness of this Complaint.

21. In summary, one point worth repeating is the simple fact this problem is both one entirely caused by Defendant and one that *easily* could have been avoided, a point made only to emphasize the poor behavior and gross misconduct by Defendant in not either properly avoiding or addressing the problem once it was brought to their attention. In fact, this matter would not have been a problem at all if Defendant had simply handled their carrier change in an appropriate manner. If CHEWIE had simply been informed of Defendant's carrier change in a timely fashion or – with respect to the *retroactive* nature of the carrier change – if CHEWIE had been notified Defendant was merely *considering* a carrier change, CHEWIE would have taken proper action to avoid any even *potential* problems. As proof, plans were well underway by September 2002 to transition to different insurance with another carrier – a change that could have *easily* been made a little sooner if CHEWIE had only known of the situation ahead of time rather than being left to learn about it through his own efforts at a much later date. That stands in stark contrast to the fact CHEWIE is yet to be provided with an accounting / explanation of the process (or lack thereof) conducted in

late 2002 to change carriers let alone the actual coverage that was paid for in good-faith. Denial of coverage that was both paid for and in place at the actual time of treatment is obvious and that fact has been communicated to Defendant on many occasions to no avail. Denial can not stand and requires immediate remedy to the fullest extent of the law, especially in light of Defendant's own refusal to provide coverage despite their documented admittance of responsibility.

22. And yet, what was Defendant 'up to' throughout the timeframe surrounding September 2002 ? Well, they were celebrating their having raised $8,000,000. That's $8,000,000 in light of having persistently, utterly, and stubbornly failed in Defendant's duties and responsibilities to properly administer their health insurance plan.

## RELIEF

CHEWIE asks that this case be expedited as the facts – once presented – are clear, extensive efforts to amicably resolve this matter have already consumed the past 18 months to no avail, and continued protraction of this matter only goes to jeopardize important and necessary continuing care.

CHEWIE hereby seeks award in excess of $202,334.38 as recently calculated on March 8, 2004 and as determined by the following:

$59,400 in mandatory penalties associated with non-compliance of clearly established ERISA and COBRA guidelines requiring notification of Plan changes. A good-faith reduction in this figure is not offered given the outstanding status of the matter and the fact the continued lack of coverage was entirely caused by Defendant's own decision to retroactively change carriers yet – at the same time –

not inform CHEWIE of their decision. The above figure is computed using the statutory penalties outlined in ERISA Section 502(c)(3) – if identified correctly – which requires a plan administrator to either meet the notice requirement or face statutory liability in the amount up to $110 per day from the date of such failure.

$59,400 in mandatory penalties associated with non-compliance of clearly established ERISA and COBRA guidelines regarding proper administration of Defendant's Plan. Guidelines make clear that employers must both take proactive action to ensure proper administration and be responsive to problems that are raised. The simple fact coverage remains an outstanding matter says enough to Defendant's total lack in proactiveness and responsiveness. A good-faith reduction in this figure is not offered given the outstanding status of the matter and the following facts: Defendant has been given many numerous opportunities to 'come clean' on this, Defendant has not 'come clean' on this, Defendant has caused very real damages by virtue of not addressing the matter in a timely fashion, and Defendant has forced CHEWIE to file a lawsuit in order to see the matter resolved. A 'good' employer would never have allowed such a problem to occur. A 'reasonable' employer would have immediately addressed the matter once it was brought to their attention. Defendant has demonstrated the behavior of neither a 'good' nor 'reasonable' employer in this regard and has instead created and perpetuated a problem that was both a reasonably foreseeable and even predictable outcome of effecting a retroactive carrier change. The above figure is computed using the statutory penalties outlined in ERISA Section 502(c) – to the extent citied correctly – which obligates a plan administrator to either administer their plan with the care, skill, prudence, and diligence required or face statutory liability in an amount up to $110 per day from the date of such failure.

$59,400 in mandatory penalties associated with refusal to provide documentation in clear defiance of established ERISA and COBRA guidelines ensuring employee access to documentation. This violation is clear-cut. Repeated attempts to obtain access to relevant documentation have all been ignored. No good-faith reduction in this figure is offered given the extraordinarily clear obligation Defendant has to provide said documentation. The above figure is computed using the statutory penalties outlined in ERISA Section 502(c)(1) – if identified correctly – which obligates a plan administrator to either furnish specified documents within 30 days of written request of a plan participant or face statutory liability in an amount up to $110 per day from the date of such failure.

$4,134.38 (with interest) to cover $3,750 in incurred costs associated with treatment delivered in September 2002 that was approved and 100% covered at the time of treatment. Included in the calculation is an annual interest of 5%.

$20,000 to compensate CHEWIE for the time and attention this matter has consumed. To date, nearly 200 hours have been invested in working directly and indirectly with Defendant to resolve this matter. This time could have been put to much better and productive use but was consumed by this matter given the very real and pressing requirement to obtain resolution in order to protect and maintain access to future treatment. This award would rely on ERISA Section 502(g) – if identified correctly – which would reasonably allow for the retroactive recovery of costs leading up to the action given the clearly demonstrated poor behavior and gross misconduct of Defendant and their efforts to avoid their clear plan administration and overall fiduciary responsibility at all costs.

An unspecified amount in relation to Defendant's breach of contract as CHEWIE had very clearly entered into a contract for continued health insurance both in good-faith and with reasonable expectation of receiving continued benefits.

An unspecified amount in relation to the added time and cost associated with ultimately having to proceed with a lawsuit. Generally, this would be considered 'attorney's fees'. Given the Pro Se nature of this case, these fees are requested in lieu of CHEWIE'S own efforts. This award would rely on ERISA Section 502(g), which allows for recovery of costs (time and expense) related to the action itself, and in this case, especially those related to the added Pro Se duties related to the overall action.

An unspecified amount for additional punitive damages associated with the impact this matter has had on CHEWIE'S healthcare situation, including but not limited to the jeopardy and uncertainty surrounding CHEWIE'S continued treatment in light of unpaid medical bills. Medical treatment has helped CHEWIE regain a measure of health not known since early 2002, and actions on the part of Defendant have unnecessarily placed CHEWIE'S continued treatment and health at risk. This award would rely on penalties outlined in ERISA Section 502(c)(3) – if identified correctly -- which states the court may in its discretion order such other relief as it deems proper.

Signature      _____

Name           MARK FELLENZ, PRO SE

Address        95 LANGLEY ROAD #1
               NEWTON CENTER, MA 02459

Telephone      857-205-5742 (cellular)