UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Mark N. Fellenz
PLAINTIFF

V.

Enkata Technologies
DEFENDANT

CIVAL ACTION

NO. _____

04 · 10563 PBS

## AMMENDMENT

### BACKGROUND

1. The following is amended to the above civil action in light of information recently uncovered by Mark Fellenz ("CHEWIE") through his own efforts (and *not* volunteered by Enkata Technologies ("Defendant")). All items presented below (except where otherwise noted) are contained in case notes generated entirely by the Employee Benefits Security Administration ("EBSA") of the Department of Labor and attached / highlighted in raw form.

2. From the EBSA's own case notes, Defendant acknowledges or was told the following:

   ➤ Defendant admitted never having notified CHEWIE of the change in insurance carriers. (Of note is the simple fact Defendant has *never* admitted wrongdoing in any way, shape, or form directly to CHEWIE. CHEWIE only learned of Defendant's admission of guilt after having received a response to a document request submitted to the EBSA.)

   ➤ Defendant acknowledges that they would be required to honor benefits if the particular benefit would have been covered. (It is repeated here and stated in original Complaint that Defendant has been *repeatedly* told treatment was both approved and 100% covered at the actual time of

treatment. In fact, *identical* treatment in prior months was approved, 100% covered, and paid in full per the Plan in place at the time, another fact repeatedly explained to Defendant to no avail.)

- Defendant was told that an insurance agent's hypothesis or theory is not adequate grounds for denial of benefits and that an arbitrary denial may be a violation of ERISA. (It would appear the Department of Labor took issue with the manner in which Defendant arrived at a decision to deny coverage.)

- Defendant admitted again that CHEWIE was not notified of the change in insurance carriers.

- Defendant understands that they face "responsibility for failure to send a timely notification of change of policy".

- Defendant asserts CHEWIE refused to appeal coverage with the insurer. (This is wrong on two counts. First, it's not true. All appeals were made. Second, Defendant was informed of this fact yet made false statements to the Department of Labor.)

- Defendant was told of their fiduciary responsibilities in detail. (What exactly that comment means is unclear in specific detail yet makes clear Defendant was counseled / advised on their responsibilities by the Department of Labor itself.)

- Defendant states that CHEWIE refused to provide necessary documentation to evaluate their responsibility. (This is also wrong, but on three counts. First, Defendant had requested such documentation and then specifically advised CHEWIE *not* to send them (medical) information but rather to send it to the insurer. Second, information *was* volunteered by CHEWIE directly to Defendant in a good-faith effort to offer credible documentation substantiating the facts at hand. Third, there is no outstanding document request by Defendant – all requests ever made have been fulfilled.)

3. Upon reading the case notes, CHIEWIE was taken aback by the clarity with which Defendant, on one hand, acknowledges their responsibility yet, on the other, fails / refuses to fulfill their fiduciary responsibility. Defendant's behavior can only be characterized as gross misconduct and may even demonstrate a pattern of intentional efforts geared toward evading their fiduciary responsibility at all cost, the later of which is quite a troubling possibility to consider. Please see the attached copy of the Department of Labor's case notes for the actual notes taken by the EBSA's representative involved in this matter.

4. CHEWIE also wishes to specifically mention that he had informed Defendant of insurer's denial of appeals and that this notification goes back to October 2003, a date that precedes the EBSA's case notes on this point. Defendant clearly can not claim CHEWIE refused to appeal when, in fact, he had *appealed* and had informed Defendant of such. Also contained in the EBSA's case notes is a claim by Defendant that Defendant can not get to the bottom of the situation without relevant documentation, a very surprising claim as CHEWIE has responded to all of Defendant's requests for documentation (even though Defendant tried to redirect CHEWIE to the insurer) and the simple fact that no outstanding requests for documentation exist. Defendant simply can not have it both ways – deny coverage (while claiming to have conducted a thorough investigation) on one hand while claiming a lack of access to documentation on the other.

5. Furthermore, Defendant claims to have fully 'investigated' the matter in arriving at their decision to deny coverage. This raises a very serious issue as *any* appeal to Defendant would necessitate what would be in layman's terms considered a 'medical review' of the case, especially given the 'not medically approved / necessary' aspect of denial.

6. The facts are, however, that Defendant never sought or obtained Health Insurance Portability and Accountability Act (HIPAA) authorization to investigate CHEWIE'S medical information. How they would come to possess medical information of a private nature without prior authorization in order to conduct a 'medical review' is unclear. Defendant faces an extraordinarily high hurdle in explaining how they came to possess such medical information legally or risk having to admit the medical information was inadequate and that any 'medical review' is – by definition – insufficient.

7. Defendant made no direct contact with either CHEWIE or the Doctor who delivered treatment in an effort to gather information in order to conduct a 'medical review'. If medical information was gathered, it was gathered without the input of two important sources. This alone would throw into question Defendant's good-faith effort to fully investigate the matter by not having collected all information to begin with and raises further questions of how Defendant may have acquired medical information in order to arrive at their decision to deny coverage.

8. It is also noted that the timeframe of Defendant's investigation / 'medical review', namely the time between which CHEWIE volunteered portions of relevant documentation and the time Defendant responded with their denial, covered a period of only 48 hours. It's hard to believe any thorough / substantive review of any kind could have been conducted in such a short timeframe, especially when Defendant was not provided with documents of a medical nature by CHEWIE (or anyone else that CHEWIE is aware of). No details of this investigation have ever been provided, and as further evidence supporting this argument – of the documents CHEWIE did provide to Defendant that were later returned in raw form – there is a little, yellow highlight on the section referring to the insurer's denial. No other notes or materials were either made or provided. It would appear Defendant 'focused like a laser beam' on the one item they themselves might use as an excuse for

- 4 -

denying benefits at the exclusion of all else.

9. Further facts also support that Defendant never conducted a proper 'medical review' in order to arrive at a determination to deny coverage. Every indication is that Defendant's 'medical review' was made by personnel with no medical background and who were responsible for administering the plan, not making judgments of a medical nature. There is no indication that an independent, licensed physician (or anyone with a medical background for that matter) was involved in any manner whatsoever with the 'medical review' itself.

10. CHEWIE is left with no option but to conclude Defendant illegally obtained private medical information without proper consent and / or conducted a fraudulent 'medical review' in order to evade their fiduciary responsibility.

11. CHEWIE can come to no other conclusion but that Defendant seeks to evade their responsibility, fiduciary and otherwise, at all cost, even clearly breaking the law. Defendant's actions can only be characterized as 'thoroughly acting in bad-faith' when, on one hand, they admit responsibility to the Department of Labor yet, on the other hand, refuse to do anything to correct / remedy the situation. Defendant can only be viewed as having acted with gross misconduct given the facts at hand and Defendant's extraordinarily poor behavior throughout.

## **RELIEF**

CHEWIE repeats his request that this case be expedited as the facts – once presented – are clear, extensive efforts to amicably resolve this matter have already consumed the past 18 months to no

avail, and continued protraction of this matter only goes to jeopardize important and necessary continuing care.

CHEWIE also offers that judgment on this case can be expedited as the core of this case – denial of benefits that were actually in place at the time of treatment as well as all the follow-on penalties related to notification, et cetera – is solely a matter of enforcement of established statute. Simply put, Defendant has 'dug its own grave' by 1) admittedly having caused the problem to begin with and 2) knowingly denying benefits that were *identical to benefits received in prior months*. There is no need for discovery – *all* that's needed is for the Court to hear the facts and fairly administer justice.

CHEWIE asks that the above be considered as appropriate and that additional relief be assessed in addition to the relief already sought in the original Complaint.

In particular, unauthorized possession of medical information is offered as an added offense of HIPAA guidelines clearly establishing the manner in which access to private medical information may be obtained. If it is instead (or also) found that a fraudulent 'medical review' was conducted, then relief appropriate to that offense is sought, too. It is unknown at this time what penalties may exist in the case of either or both offenses.

| | |
|---|---|
| Signature | _[signature]_ |
| Name | MARK FELLENZ, PRO SE |
| Address | 95 LANGLEY ROAD #1<br>NEWTON CENTER, MA  02459 |
| Telephone | 857-205-5742 (cellular) |

TO ULTIMATELY FILE IN A COURT OF LAW. CO IS IN CA. 11/28/03 @2:30PM, I SPOKE TO P. I TOLD P THAT I STILL HAVE NOT RECEIVED HIS PAPERS. P NEVER H A LAPSE IN COVG. HOWEVER THE INS CO (PERHAPS FULLY INSURED PLAN) THAT HAS TAKEN OVER RETROACTIVE TO 09/01/03 HAS DENIED P'S CLAIMS, CLAIMING THAT THEY WERE NOT MEDICALLY NECESSARY. AT THE TIME THAT P WENT FOR THESE BENEFITS, HE HAD NO IDEA THAT THE BENEFIT WAS NOT COVERED AND THAT HIS CO' HAD LAPSED. THE PLAN NEVER NOTIFIED PS. THE PLAN IS IN VIOLATION OF THE NOTICE REQUIREMENT. I MUST ASK THE PA IF THIS IS A SELF INSURED PLAN. IF SELF-INSURED PLAN. P SAID THERE IS ONLY ONE CLAIM AT ISSUE. P WILL FAX ME COPY OF THE CLAIM. W/ THE NAME OF DIRECTOR OF HR AND HIS EIN SO I CAN FIN OUT WHO THE PA MAY BE. P HAS APPEALED. P'S FIRST APPEAL WAS DENIED. P'S SECOND APPEAL IS PENDING. P IS BELIEVING THAT THE SECOND APPEAL WILL BE DENIED SOON. 12/02/03, I RECEIVED P'S FAX. P HAS A LETTER INCLUDING THE UNPAID HEALTH CLAIM AND THE NAME OF THE PA. PA=RANDY HEPPNER, CONTROLLER @650-227-6500. @11:00AM, I LEFT PA A DETAILED MSG AND REQUESTED A CALL BACK. @11:00AM, I ADVISED P OF THE ABOVE. 12/02/03 @1:10PM, I SPOKE TO PA, MR. HEPPNER. MR. HEPPNER ADMITTED THAT P WAS NEVER NOTIFIED OF THE CHANGE IN INS CARRIER. WE DID NOT DISCUSS THE ORIGINAL LOSS OF COVG. PA STATED THAT THE CO HAD MADE A DECISION THAT SINCE P WAS NOT NOTIFIED OF THE CHANG IN THE PLAN AT THE TIME HE SOUGHT THIS PARTICULAR BENEFIT, THE PLAN WOULD PAY FOR P'S BENEFIT IF THE PLAN DETERMINED THAT THIS PARTICULAR BENEFIT WOULD HAVE BEEN COVERED BY THE PREVIOUS PLAN. PA STATED THAT HIS INS CARRIER HAD TOLD P THAT THIS IS AN EXPERIMENTAL PROCEDURE AND EXPERIMENTAL PROCEDURES ARE USUALLY NOT COVERED BY THE PLAN AND THAT IS WHY THEY DENIED IT. I TOLD PA THAT ACCORDING TO FED LAW, PAYMENT OF CLAIMS MUST BE BASED O PLAN RULES. INS AGENT'S HYPOTHESIS OR THEORY IS NOT GOOD ENOUGH. PA SAID THAT THE INSURANCE AGENT AND HIS ASSISTANT LATISHA WORKED ON THIS AND PERHAPS THEY COULD RETRACE THEIR STEPS FOR ME. ASSISTANT IS OUT ON VACATIO UNTIL 12/16/03. AS SOON AS ASSISTANT COMES BACK PA WILL HAVE HER CALL ME S THEY CAN SHOW ME HOW THE COMPANY MADE THE DENIAL DECISION. I TOLD PA I NEE TO SEE THE PREVIOUS PLAN PROVISION OR BENEFIT BOOKLET THAT SUGGEST THIS SPECIFIC BENEFIT IS EXCLUDED. I TOLD PA THAT AN ARBITRARY DENIAL OF THE CLAIM MAY BE IN VIOLATION OF FED ERISA LAW. @1:20PM, I LEFT P A MSG AND REQUESTED A CALL BACK. (ALTHOUGH P HAS SOME PATHOLOGY DOCUMENT FROM HEALTHNET THAT HE USES AS AN EXHIBIT THAT THIS BENEFIT SHOULD HAVE BEEN PAID IN FULL, I NEED P TO SHOW ME THE BENEFIT BOOKLET OR A STATEMENT FROM HEALTH NET THAT SHOWS THIS WAS A COVERED BENEFIT ACCORDING TO THE PREVIOUS INS CARRIER.) PA STATED THAT HE BELIEVES THE ER GROUP HEALTH PLAN IS A FULLY INSURED PLAN B/C THEY ARE A VERY SMALL COMPANY.). CHECKED EDS--NO HITS. CHECKED GSS--NO HITS. EMS--NO HITS. THE PLAN IS BASED IN CALIFORNIA AND THE PA IS IN CALIFORNIA AS WELL. 12/22/03 @2:18PM, LATISHA ANGELES ("ER") CALLED AND STATED THAT SHE IS GATHERING DOCUMENTS FOR ME. SHE ALSO SAID THAT P WAS PAYING COBRA BENEFITS DIRECTLY TO HEALTHNET. I ASKED ER HOW MANY EES THEY HAD HAD THE YR BEFORE AND P SAID THAT SHE HAD TO RUN B/C OF AN EARTHQUAKE. @3:00PM, ER SAID THAT THE REASON FOR THIS PROBLEM WAS B/C AS OF 09/01/03, ER'S FULLY INSURED PLAN CHANGED INS CARRIERS FROM HEALTH NET TO BCBS. ALL PS AND COBRA BENEFICIARIES WERE NOTIFIED AHEAD OF TIME EXCEPT THE ABOVE P. FOR SOME REASON P WAS PAYING HIS COBRA PREM DIRECTLY TO HEALTHNET SO WHEN ER SENT OUT THE NOTICES, THE ABOVE P WAS FORGOTTEN. ER UNDERSTANDS THAT SHE/HE FACES SOME RESPONSIBILITY FOR FAILURE TO SEND A TIMELY NOTIFICATION OF CHANGE OF POLICY TO P. ER HAS ASKED P TIME AND TIME AND AGAIN TO APPEAL THE CLAIM. ER IS WILLING TO CONSIDER PAYING FOR P'S CLAIM IF HIS APPEALS ARE DENIED. P HAS REFUSED TO APPEAL AND HAS SENT AN EMAIL THAT HE HAS ALREADY SPENT TOO MUCH TIME AND ER SHOULD PAY FOR HIS CLAIM. I DISCUSSED ER'S FIDUCIARY RESPONSIBILITIES IN DETAIL AND TOLD ER THAT IF ER FAILS TO PAY FOR THE CLAIM, P HAS THE RIGHT TO SUE ER IN A COURT OF LAW. ER SAYS THAT B/C OF PRIVACY ISSUES, ER HAS NO WAY OF FINDING OUT WHETHER THIS WOULD HAVE BEEN A COVERED BENEFIT UNDER THE OLD PLAN. ER WOULD